APPEAL OF ILLINOIS RURAL CREDIT ASSOCIATION.

Docket No. 5058.   Submitted December 11, 1925.   Decided April 3, 1926.

> Subscribers to capital stock, after making partial payment on their subscriptions, defaulted in meeting the remaining payments due. The stock so subscribed for, together with payments then made, was declared forfeited to the corporation, but with the privilege to the subscribers to re-subscribe and thereby receive credit for the payments declared forfeited. *Held,* the payments declared forfeited are not income to the corporation.

*R. C. De Mange, Esq.,* for the taxpayer.
*M. N. Fisher, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1918 in the amount of $9,507.29. The question involved is whether payments made by subscribers to capital stock, which were forfeited to the corporation upon default in payment of installments due, constitute taxable income.

FINDINGS OF FACT.

The taxpayer is a Delaware corporation with its principal office at Bloomington, Ill. It was organized in March, 1916, with an authorized capital of $1,000,000, divided into 20,000 shares of a par value of $50 each.

By written contract dated March 25, 1916, the taxpayer employed two agents to obtain subscriptions to its capital stock at $100 per share. Under this contract the agents were authorized to sell and accept subscriptions to the stock on the basis of cash payment in full,

less a discount, or 25 per cent cash payment and three notes of the subscriber's each representing 25 per cent of the amount of the subscription, payable in three, six, and nine months from date. The agents were to receive, as commission and full compensation for their services, 25 per cent of the gross amount realized from the sale of stock, which commission the taxpayer agreed to pay from each sale upon receipt of each subscription contract with the cash payment and the notes for deferred payments. Out of the commissions received the agents agreed to pay all expenses, including office rent, telephone, stationery, etc., incurred in starting the business of the taxpayer and in the selling of its stock. They also agreed to reimburse the taxpayer for the salaries paid by it to its president and secretary to and including June, 1916.

The agents had no connection with the taxpayer except their employment under contract.

In accordance with the terms of their contract of employment, the agents during 1916, 1917, and the early part of 1918, secured a number of subscriptions to the capital stock of the taxpayer.

Some of the subscribers failed to meet their notes when due and were advised by the taxpayer, by letter, that, unless payment was made by a specified date, the stock subscribed for would be offered for sale, and if no outside bidder could be had the stock might either be purchased by the taxpayer or forfeited to it together with any payments that had been made.

On December 1, 1917, a meeting of the board of directors was held at which 1,319½ shares of stock, for which payments on subscriptions were in default, were offered for sale, but no bids being made therefor, on motion duly carried, a resolution was adopted that the stock should be forfeited to the taxpayer. A similar meeting was held on January 7, 1918, at which 121 shares of stock were declared forfeited to the taxpayer. In addition to the stock forfeited at the latter meeting, subscriptions to 213 shares had been released by agreement between the taxpayer and the subscribers, making a total of 334 shares forfeited or released in 1918.

Prior to the meeting of December 1, 1917, subscribers to the stock which was declared forfeited on that date had paid on account of their subscriptions $34,150, of which the selling agents had received as their commissions $32,987.50 and the taxpayer had received $1,162.50. With respect to the stock forfeited at the meeting of January 7, 1918, and the stock released in 1918, subscribers had paid $8,800, of which the selling agents had received $8,350 and the taxpayer had received $450. The total amount paid by subscribers on the stock so declared forfeited was $42,950.

After the stock subscribed for and the payments on the subscriptions of delinquent subscribers had been declared forfeited, the taxpayer notified such subscribers by letter that they might re-subscribe for the forfeited shares, in which event they would be given credit for the payments they had theretofore made and which had been declared forfeited and would be reinstated as members and entitled to all the privileges and benefits of the association. Subsequently, two of the subscribers whose stock had been declared forfeited for delinquency in meeting payments on their subscriptions took advantage of this offer of the taxpayer and became stockholders.

In its income-tax return for 1918 the taxpayer did not include the sum of $42,950 as income, but did add that amount to its average invested capital for the year. The return filed showed a loss for the year and consequently no tax due. The Commissioner added the amount of $42,950 to income for the year, which resulted in a net taxable income of $34,225.21 and gave rise to the deficiency from which the taxpayer appeals.

OPINION.

GRAUPNER: The issue in this appeal is whether the sum of $42,950, or any part of it, which was paid by subscribers on account of their subscriptions to capital stock of the taxpayer, was income to the taxpayer.

The payments on account of the stock subscriptions, at the time they were made, were undoubtedly capital payments, being made to provide capital for the corporation, and were in its hands capital receipts as distinguished from income. The fact that payments were made in installments and stock was never issued for such payments, because they were not made to the full amount of the subscriptions, does not alter their character.

*There is no deficiency and it will be so ordered.*